## OLSEN WATER & TOWING CO., Inc., v. UNITED STATES, and three other cases.

Circuit Court of Appeals, Second Circuit.
July 26, 1927.

No. 368.

1. **Bailment** ⟜14(1)—Company employing inexperienced workman to assist in use of acetylene torch held responsible for fire under contract indemnifying shipowner for preventable damage.

Dockyards company, repairing ship under a contract providing that it should be responsible for all damage, except damage which by the exercise of reasonable care it was unable to prevent, *held* responsible for a fire caused by sparks from an acetylene torch, igniting oil on bilge water, when inexperienced workman dropped bucket intended to catch sparks.

2. **Bailment** ⟜14(1)—That government inspectors approved torch-bucket method in repairing United States ship held not to excuse dockyards company for negligence of inexperienced employee.

That government inspectors were content to have torch-bucket method used in repairing United States ship *held* not to excuse dockyards company from the negligence of an inexperienced workman, especially since the duty of the inspectors was merely to see that the contract for repairing was fulfilled, and not to instruct the company in the details of performance.

3. Bailment ⬤⟶31(3)—Evidence held not to show amount of oil in bilges required notice to company repairing ship with acetylene torch.

Evidence *held* not to show that there was such an excessive amount of oil in the bilges of a ship being repaired by dockyards company with acetylene torch that the shipowner was negligent in not informing the company that the quantity of oil was abnormal.

4. Salvage ⬤⟶23—Shipowner, when sued for salvage, properly impleaded third party, negligence of which necessitated salvage services (admiralty rule 56).

Where a ship owned by the United States caught fire from negligence of workmen of a repair yard, where it was being repaired, and owners of tug boats filed libels for salvage services in extinguishing the fire, the United States, under admiralty rule 56, properly impleaded the repair yard, as having assumed responsibility for any damages that might be decreed libelants.

Appeal from the District Court of the United States for the Eastern District of New York.

Libels in admiralty by the Olsen Water & Towing Company, Inc., as owner of the steam tugs Marie Olsen, Marion Olsen, and Alexander Erickson; by the Red Hook Towing Line, Inc., as owner of the steam tug Alice M. Drew; by the Diamond Water & Transportation Company, Inc., as owner of the steam tug Blue Ridge; and by the Alderton Dock Yards, Limited, against the United States—the cases being tried together. In the first three cases the United States impleaded the Alderton Dock Yards, Limited. In the first three cases, decrees were for libelants and the impleaded respondent. In the fourth case, there was an interlocutory decree for the libelant. The United States appeals. Reversed, with directions.

Three of the libels were filed by owners of tug boats to recover the value of salvage services in assisting to extinguish a fire which broke out in No. 2 hold of the steamship West Nohno, owned by the United States. They were brought under the Suits in Admiralty Act of March 9, 1920 (46 USCA §§ 741–752 [Comp. St. §§ 1251¼–1251¼*l*]). In each case the United States filed a petition impleading under the fifty-sixth rule in admiralty the Alderton Dock Yards, Limited, on the theory that it had by contract assumed responsibility for any damages which might be decreed in favor of the libelants. Final decrees were entered awarding salvage against the United States, and dismissing on the merits its petitions impleading the Dock Yards. The appeals do not question the awards for salvage, but only

21 F.(2d)—20

the dismissal of the petitions impleading the Dock Yards.

The fourth libel was brought by the Dock Yards to recover the cost of repairing damage to the West Nohno caused by the fire. The respondent answered that the repairs were necessitated by the negligence of the libelant in starting the fire. From an interlocutory decree in favor of the Dock Yards, the United States has appealed.

Such further facts as are deemed material will appear in the opinion.

Charles H. Tuttle, U. S. Atty., of New York City (George A. Washington and Walter Schaffner, Sp. Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Macklin, Brown, Lenahan & Speer and Crowell & Rouse, all of New York City (Paul Speer and E. Curtis Rouse, both of New York City, of counsel), for appellee Alderton Dock Yards, Limited.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). Alderton Dock Yards, Limited, made a contract to carry out certain alterations and repairs on the West Nohno. She is an oil-burning ship, and part of the work contracted for consisted in the installation in No. 2 hold of reach rods from the bridge deck down to the valves in the feed pipes for the fuel oil. The oil is carried in tanks amidships along the bottom of the ship. The bilges are about three feet from the top of the tanks and on either side thereof. In doing the work, an acetylene torch was used by Dock Yards' employees to burn off a nut, and the fire was caused by sparks falling into the bilge and igniting the film of oil on the surface of the bilge water.

[1] For a fire so caused the appellee was made responsible by its contract, unless it could affirmatively show that this was a cause beyond its control and nonpreventable by the exercise of reasonable care. The contract provision reads as follows:

"While the vessel is undergoing repairs or alterations at the contractor's yard or wharf, the contractor shall be held responsible for and make good at his expense any and all damage, of whatsoever nature or/and loss, to the vessel, and/or its equipment or/and its movable stores, except where contractor can affirmatively show that such loss or damage is due to causes beyond contractor's control and which by the exercise of reasonable care he was unable to prevent."

The sole question, therefore, is whether the evidence shows that the Dock Yards was free from negligence. The Dock Yards contends, and the court so found, that the customary way to do the work was to use a burner and have a man hold a bucket to catch the sparks, and that the government's inspectors and the ship's officers were aware of the method employed and thought there was no danger in it.

It would doubtless be conceded that to do the burning without having a man to hold a bucket for the sparks would not be customary practice and would evidence a negligent performance of the work. But, in effect, work was being done without a bucket at the moment the fire started. The workman had dropped his bucket because sparks had burned him. He testified:

"The same time I dropped the bucket sparks fell in the bilge. That started the fire."

The bucket holder was a pipe fitter by trade. He was inexperienced in burning, having never held a bucket before. There is no evidence that he wore gloves or took customary precautions against being burned. For a workman, whose duty is to catch sparks, to drop his bucket and thus allow them to fall just where his duty is to prevent their falling, seems to us clear evidence of negligence in performing the work.

It is true that a bucket will not catch all sparks which the torch throws off. Indeed, it may well be questioned whether reasonable care would not demand a more effective screen, such as the use of a wet canvas, or even the abandonment of the use of the torch altogether, where work is to be done in close proximity to inflammables. See Gibson v. Grangemouth Dock Yard Co., 27 Lloyd's List, 338. But, passing that and assuming the torch bucket method to have been a proper way to do the work, the execution of the work by that method was not performed with due care. The bucket was dropped by an inexperienced workman. While the customary practice shows that fire is not feared from occasional sparks which escape, it shows, also, that it is feared if all the sparks escape. The added danger when this happens seems to be demonstrated by the sequel in this very case. The work had proceeded all the morning without setting a fire. The first time the bucket was dropped, the fire resulted. On these facts we think that the contractor failed to show that the fire was nonpreventable by the exercise of reasonable care.

[2] Against this conclusion it is urged (1) that the government's inspectors were content to have the torch-bucket method employed; and (2) that the United States was negligent in having an excessive amount of oil in the bilges and in not informing the Dock Yards of this fact.

In reply to (1) it may be said that the duty of the inspectors was to see that the contract was fulfilled, not to instruct the contractor in the details of his performance. Their approval would scarcely furnish a legal sanction for his negligence. But, more than that, their approval went only to the method employed, not to the specific act of negligence which was the immediate cause of the fire. Edwards, one of the inspectors, testified that he thought there was no particular danger in the torch, if used "with discretion."

[3] As for (2) we have carefully examined the testimony, and can find no evidence that there was more than the usual seepage of oil into the bilges. Dimmick, one of the government inspectors, testified that there was the usual film of oil on top of the bilge water; that he stirred the water in the bilges and found "a thin film, about general conditions aboard a fuel ship." Edwards says that he saw the usual film of oil on top of the bilge water. Cornewal, the chief officer, testified that there was a small amount of oil floating about in spots, and that all oil-burning ships always have a little oil in the bilges. The floating film of oil was as apparent to the Dock Yards employees as to the employees of the United States. There was no duty on the latter to notify the Dock Yards of the conditions under which its work was being done, unless the quantity of oil was abnormal, and of that, as already stated, we find no evidence.

The District Court found that the excessive quantity of oil in the bilges was indicated by the fact that the depth of the starboard bilge was raised two inches during the night before the fire. But we find no evidence from which to infer that the increased quantity of fluid in the bilge was caused by seepage of oil, rather than of water, unless the fire itself may justify such inference. But all the testimony was that the bilge contained only the usual film of oil, and the fire is more naturally explained by the excessive quantity of falling sparks, due to dropping the bucket, than by presuming an excessive quantity of oil contrary to the direct testimony.

[4] For these reasons we feel constrained to reverse the decrees. In the three salvage cases, decrees should be entered, allowing recovery over in favor of the United States against the impleaded respondent for the amounts of the salvage awards. In the libel brought by Alderton Dock Yards, Limited, the interlocutory decree should be reversed, and the libel dismissed.